JOSHUA TRASK, petitioner for review,

*vs.*

INHABITANTS OF UNITY.

Waldo.    Opinion December 18, 1882.

</div>

<div align="center">*Review.    Second petition.*</div>

After the lapse of eight years from the time of the commencement of an action, after two verdicts adverse to the petitioner, and after one review had on account of the discovery of new testimony, a second review will not be granted unless the court is fully satisfied that the alleged newly discovered evidence was unattainable by the utmost diligence and that it would change the result.

It will not be granted to enable a party to discredit a witness, nor when the evidence is collateral.

ON report of the evidence upon a second petition for review.

The opinion states the case.

*S. S. Brown*, for the petitioner.

*Thompson and Dunton*, for the respondents.

APPLETON, C. J.    This is a second petition for a review on the ground of newly discovered evidence, and after two verdicts against the petitioner.

On the seventh day of January, 1870, the plaintiff, while passing over a highway in the defendant town, was injured as he alleges, by a defect in the same. He thereupon brought an action to recover compensation for the injuries then sustained. The cause was tried at the January term, 1873, and a verdict was rendered for the defendants. At the January term, 1877, he filed a petition for a review of the action on the ground of the discovery of new and important testimony. The petition was granted and a review ordered. The cause was tried at the January term, 1878, and a second adverse verdict was rendered against the petitioner.

At the January term, 1880, having been fortunate in the second discovery of new and important testimony, as he thinks, the petitioner files the present petition, which by the statute, is to be heard and determined by the "full court." R. S. c. 89, § 6.

No exceptions appear to have been taken to the rulings of the justice presiding at the trials already had nor any motions made to set aside the verdicts as against law or evidence.

It may be assumed that the rulings were correct law, and the verdicts in accordance with the evidence, else the petitioner with his vigilant pertinacity would have filed his exceptions to the former or his motion to set aside the latter. If exceptions were alleged and motions filed and overruled, the correctness of the rulings and the propriety of the verdict would rest not on presumptions but on the deliberate judgment of the court.

Courts are reluctant to grant a new trial for the discovery of new testimony after one trial, — much more after two. They require vigilance on the part of those in litigation, in discovering and procuring material and important testimony. A new trial will not be granted for evidence newly discovered when the evidence was known to the party and by reasonable diligence it might have been procured. *Woodis* v. *Jordan*, 62 Maine, 490 ; *Gardner* v. *Gardner*, 2 Gray, 434. Nor unless there be reason to believe that it will change the result. *Handly* v. *Call*, 30 Maine, 9 ; *Snowman* v. *Wardwell*, 32 Maine, 275 ; *Todd* v.

*Chipman*, 62 Maine, 189. Nor when the evidence is collateral. *State v. Carr*, 21 N. H. 166. Nor when it is merely to discredit a witness. *Haskell* v. *Becket*, 3 Greenl. 93 ; *State* v. *Carr*, 21 N. H. 166. Nor by the common law when the evidence is merely cumulative, though it is otherwise by the statute. R. S., c. 89, § 4.

The newly discovered evidence on account of which a new trial is claimed, relates to the condition of the road; the injury the plaintiff sustained and his antecedent health; the fact of notice to the defendants of the dangerous condition of the road, and warnings of the danger of attempting to pass over it,— and an impeachment of some of the defendants' witnesses.

I. As to the dangerous condition of the road there is little dispute. No new facts are offered. The new evidence offered might have been obtained before, if deemed of importance, by the slightest diligence.

II. The petitioner, at the trials in 1873 and 1880, must have known of the previous condition of his health as well as of the consequences resulting from his alleged injuries. He could not at the second trial have been surprised as to the testimony of the defendants on these points, inasmuch as it is not pretended that it varied from that delivered in the first.

III. The petitioner alleges in his writ that the highway over which he was passing, was overflowed with water and ice to the depth of two feet or more, and for the distance of forty or fifty feet; that he had no knowledge of the condition of the way; that it was extremely cold; that he drove along to about midway of the ice and water, when his horse was forced to stop and could go no further; that he was obliged to leave his horse, and passing through the water and ice, to go a mile for help and return wet, with his clothing frozen to the middle, &c. in consequence of which he suffered in health, &c.

The principal ground of defense, was that the petitioner had full knowledge of the dangerous condition of the road, arising from previous rains; that he stopped at Vickery's store in Unity, between eight and nine o'clock, in the evening of the accident; that he was there told the road was overflowed; that he could

not get over; that it was not safe to go by the foot of the pond; that he could go by the head of the pond, where the distance would have been greater, but the road safe; that he replied he had travelled at all hours of night and day, and that he would risk but what he could pass safely.

These facts were proved by six witnesses: Fogg, Bagley, Harmon, Bartlett and the two Vickerys. This testimony was no surprise to the petitioner. It had been given before. It was contradicted by him, he testifying that he did not call at Vickery's and had no such conversation. But his testimony was not newly discovered.

To disprove the statements of the defendants' witnesses, he called witnesses who testify that they saw him at Freedom post office at half past eight, and that from the distance, he could not have been at Vickery's at the time stated by defendants' evidence. But nothing is so uncertain as testimony, as to a particular hour of a particular day, when there is no interest to remember it; and the attention of the witnesses is not called to the matter till ten or twelve years after. The difference of an hour in the statements of witnesses, is not a grave contradiction. It is reasonably explainable. Further, if the new witnesses saw the petitioner, he must have seen them, and it was his negligence that they were not called.

IV. Two of defendants' witnesses are proved to have made statements to the effect that Stevens said that he "swore to a damned lie," and Newman Vickery said he did "not know a damned thing about the case," &c. But these witnesses swear they never made such statements. It is hardly credible that they would voluntarily admit they had committed perjury.

There is much of the new proof offered, which relates merely to collateral points. Evidence newly discovered after ten years' search, is liable to grave suspicions. Courts should be strict in their requirements when new trials are sought for such cause. When the cause was tried in 1878, the petitioner had had eight years to seek out existing testimony. "In deciding motions for new trials on account of newly discovered evidence," remarks EASTMAN, J., in *State* v. *Carr*, 21 N. H. 166, "courts have

found it necessary to apply somewhat stringent rules, to prevent the endless mischief which a different course would produce. Careless preparation, tampering with witnesses, repeated and fruitless trials, and immense expense in litigation, would be a few of the many evils attendant upon a loose practice in this respect." There must be an end of litigation, and we know of no fitter time to put a final end to this than the present.

> *Petition denied. Costs for the defendants.*

WALTON, BARROWS, DANFORTH, VIRGIN, PETERS and SYMONDS, JJ., concurred.